UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| STACEY LANGLEY, ) | Civil Action No.: 4:11-cv-3324-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| ) | |
| DOLGENCORP, LLC, d/b/a Dollar ) | |
| General Stores; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## I.     INTRODUCTION

This is an employment discrimination case. Presently before the court is Defendant's Motion to Strike (Document # 40) portions of Plaintiff's Affidavit offered in opposition to Defendant's Motion for Summary Judgment. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.

## II.    PROCEDURAL HISTORY

Defendant filed a Motion for Summary Judgment on November 21, 2012. Prior to that, on October 10, 2012, Defendant took Plaintiff's deposition. See Pl. Dep. 1 (Ex. A to Def. Motion for S.J.). Portions of Plaintiff's deposition were offered as evidence in support of Defendant's Motion for Summary Judgment. Following the filing of Defendant's Motion for Summary Judgment, on November 27, 2012, Plaintiff signed an Affidavit, which Plaintiff attached to her Response in opposition to Defendant's Motion for Summary Judgment. See Pl. Aff. (Ex. 1 to Pl. Response). Defendant subsequently filed it's Motion to Strike portions of Plaintiff's deposition as contrary to

the testimony presented in her deposition and as hearsay.

## III. DISCUSSION

### A. Conflicting Testimony

"It is well recognized that a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony." Alba v. Merrill Lynch & Co., 198 Fed. Appx. 288, 300 (4th Cir.2006); see also Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). Indeed, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Barwick, 736 F.2d at 960 (internal quotation omitted).

However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" when ruling on a motion for summary judgment, Okoli v. City of Baltimore, 648 F.3d 216, 231 (4th Cir.2011) (internal quotations omitted) and, thus, to avoid infringing upon the province of the fact finder, striking affidavit testimony "must be carefully limited to situations involving flat contradictions[1] of material fact." Mandengue v. ADT Sec. Sys., Inc., No. ELH-09-3103, 2012 WL 892621, *18 (D. Md. Mar.

---

[1]The Supreme Court first used the phrase "flatly contradicts" in Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999): "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."

14, 2012) (emphasis added). The Mandengue court continued,

> The inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. Thus, the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.

Id. (quoting Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009) (alterations omitted) (internal quotation marks omitted)). See also Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 n.7 (4th Cir. 2001) (noting "there must exist a bona fide inconsistency" in order to render an affidavit a "sham" and finding that the district court had erred in finding unclear deposition testimony contradictory); Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893-94 (5th Cir. 1980) (a court "cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition").

Defendant specifically raises the portions of Plaintiff's Affidavit that it contends are contrary to her deposition testimony and will address each one in turn.

1) In her Affidavit, Plaintiff averred that she told Betty Dent, her former Store Manager, that Albert Boyd "had been propositioning me for sex and making very sexual statements when he was there." Pl. Aff. ¶ 4. During her deposition Plaintiff testified that she told Dent that Boyd had "said some nasty stuff to her" and was "fresh" or "nasty,"[2] claiming Dent "knew what she meant." Pl. Dep.

---

[2] Later in her deposition, Plaintiff explains what she means by "fresh" and "nasty":
Q: When you say he got fresh with her, what does that mean?
A: The word fresh, that just means saying something sexual or saying something nasty, nasty meaning if he refer to your genitals, your butt, your private part, it's just being fresh, being sexual.
Q: Does it have–so being fresh has to be sexual? I mean, is it something non-sexual as well?
A: You wouldn't take it as non-sexual.

74, 81, 85, 86. She later testified she did not tell Dent anything else. Pl. Dep. 81.[3] While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

2) In her Affidavit, Plaintiff averred that she told Erica Campbell, her former District Manager, about Boyd "making passes at [her] and saying nasty (sexual) things when she mentioned [Plaintiff]" possibly going to work at the Kingstree store full time. Pl. Aff. ¶ 4. During her deposition, Plaintiff testified that she told Campbell she did not want to go work as Boyd's assistant because she did not feel like "getting hit on every day." Pl. Dep. 86-87. Plaintiff testified "that's all I said to [Campbell]." Pl. Dep. 87. Clearly, "making passes" and "getting hit on" are not directly flatly contradictory. Saying "nasty (sexual) things" is different than "getting hit on." While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

3) In her Affidavit, Plaintiff averred that she later told Dent that she was "very uncomfortable with [Boyd] or that he was 'at it again.'" Pl. Aff. ¶ 5. During her deposition, Plaintiff testified that she told Dent that Boyd was "at it again" when he would make comments to her at the

---

Pl. Dep. 159-60.

[3] However, after Plaintiff described to the deposing attorney details regarding Boyd's actions, such as saying "do you want to meet me in the storeroom so I can squeeze those titties," making "moans, " and "referring to my genitals," she was asked, "And did you explain kind of in the detail you've explained to me, did you explain it that way to Betty Dent?" to which Plaintiff answered, "when she asked me about going over there to be his assistant permanently, that's when I told her." Pl. Dep. 77-81.

-4-

Andrews Store. Pl. Dep. 85. She specifically testified that she provided no further details about what she meant because she believed that based on what she had told Dent previously (Boyd is "fresh" and "nasty"), that Dent "knew what she was talking about." Pl. Dep. 85-86. While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

  4) In her Affidavit, Plaintiff averred that she "hated" coming into work. Pl. Aff. ¶ 5. During her deposition Plaintiff did not similarly testify despite speaking at length about Boyd's comments and her day-to-day work. At most, Plaintiff said it was hard to work with Boyd coming in and out of the store after the end of Dent's employment and before he became the Store Manager. Pl. Dep. 93. While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

  5) In her Affidavit, Plaintiff averred that prior to her phone call where she told Boyd she was not going to sleep with him, she would tell Boyd "it ain't happening" or "I don't think so." Pl. Aff. ¶¶ 6, 8. During her deposition, Plaintiff specifically testified that, in response to Boyd's comments, she "just brushed it off, " "ignored him," or made "a facial expression" but "didn't say anything" to him until the time on the phone where she told him she would not sleep with him. Pl. Dep. 79-80, 86, 92, 93, 95-96. This portion of Plaintiff's Affidavit will not be considered in connection with the Motion for Summary Judgment. Defendant also argues that Plaintiff changed her testimony about the phone call from it being the first time she said anything to Boyd "the first time she showed [Boyd] how angry she was." Pl. Aff. ¶ 8. While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not

appropriate; it is not clear that the testimony is flatly contradictory.

6) In her Affidavit, Plaintiff averred that Boyd told her he had influence with Defendant and that he supposedly had helped another Assistant Store Manager get a promotion. Pl. Aff. ¶ 8. Defendant argues that during her deposition Plaintiff did not speak of this despite being asked and testifying about what Boyd said to her about a promotion. Defendant does not point to any particular deposition testimony with which this Affidavit testimony conflicts.[4] Thus, this portion of Plaintiff's Affidavit is not stricken.

7) In her Affidavit, Plaintiff averred that after she rejected Boyd "it was clear though that he was mad at me. He would have a real bad attitude and would not talk to me at all or when he would it would be real nasty." Pl. Aff. ¶ 8. During her deposition, Plaintiff testified that they never really had conversations and that after she rejected him Boyd came in less, not saying too much to her at all. Pl. Dep. 101. While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

8) In her Affidavit, Plaintiff averred that after Boyd became the Store Manager he "still treated me like he hated me and gave me menial tasks to do that normally would be done by a new associate." Pl. Aff. ¶ 9. Defendant argues that during her deposition, Plaintiff never mentioned any anger from Boyd and said that once he became Store Manager, they only worked together 2 or 3 times before her termination. Pl. Dep. 101. Defendant also argues that Plaintiff testified that as the Assistant Store Manager, she basically did everything, including stocking, recovering and cleaning. Pl. Dep. 22. While this may give rise to a credibility issue for the trier of fact, considering the

---

[4] However, see Pl. Dep. 91-92.

colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

9) In her Affidavit, Plaintiff averred that Boyd said he would work the second half of the double shift he allegedly told her to take off. Pl. Aff. ¶ 12. In her deposition, Plaintiff never claimed that Boyd worked that shift and other evidence in the record reveals that Darrigo worked it. Pl. Dep. Ex. 16, p. 3; Darrigo Dep. Ex. 1.While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.[5]

10) In her Affidavit, Plaintiff avers that Boyd was responsible for checking and approving payroll for week ending March 12 and, thus, should have caught her time discrepancy. Pl. Aff. ¶¶ 10, 12, 13.  Plaintiff testified in her deposition that the time entry was her mistake. Pl. Dep. 69:19-70:6, 142:4-6; P. Dep. Exhs. 14, 16.  While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

11) Defendant argues that Plaintiff further expanding on the ever changing story of how her March 11 timekeeping mistake was made, this time disavowing her deposition testimony that the "payroll roll up" was just an estimate and that an employee's clocked in and out was the true measure of what time would be paid. Compare Aff. ¶ 11 and P. Dep. 54-55.  While this may give rise to a credibility issue for the trier of fact, considering the colloquy and the deposition as a whole, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

---

[5]It is noted that in an earlier paragraph in Plaintiff's Affidavit, she avers that Boyd told her someone else would work that shift, not that he would work that shift. Pl. Aff. ¶ 10.

12) In her Affidavit, Plaintiff avers that Boyd was "cocky" and "smirking" during the termination meeting. Aff. ¶ 11. Defendant argues that Plaintiff never testified to such a thing despite being asked about and answering how the termination meeting went. However, Defendant does not point to any particular deposition testimony with which this Affidavit testimony conflicts. Thus, striking the testimony is not appropriate; it is not clear that the testimony is flatly contradictory.

### B.    Hearsay Testimony

Hearsay is defined in Rule 801(c) of the Federal Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is "not admissible," absent a rule of evidence or other statute or rule that renders it admissible. Rule 802, Fed.R.Evid. At the summary judgment stage, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Accordingly, "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment." Maryland Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir.1991); accord Barnes v. Montgomery County, 798 F.Supp.2d 688, 691 (D.Md.2011) ("[H]earsay statements ... cannot support or defeat a motion for summary judgment.").

Defendant argues that Plaintiff's Affidavit contains inadmissable hearsay, and asks the court to strike the portion which states "[i]t seemed to me that he (Albert) did this to some of the other girls at the Kingstree store and I say this because one or two told me he made sexual statements to them." Pl. Aff. ¶ 4. This statement fits within the definition of hearsay. Plaintiff does not address Defendant's hearsay argument, and thus, points to no exception under which this statement would fall. Accordingly, this portion of Plaintiff's Affidavit will not be considered in connection with

Defendant's Motion for Summary Judgment.

## IV.     CONCLUSION

In sum, the undersigned finds only two portions of Plaintiff's Affidavit testimony to be inappropriate: her averment that she told Boyd "it ain't happening" or "I don't think so," Pl. Aff. ¶¶ 6, and her averment that "[i]t seemed to me that he (Albert) did this to some of the other girls at the Kingstree store and I say this because one or two told me he made sexual statements to them." Pl. Aff. ¶ 4.  However, rather than striking these statements from the record, they simply will not be considered in connection with Defendant's Motion for Summary Judgment.  Accordingly, Defendant's Motion to Strike (Document # 40) is **GRANTED** in part and **DENIED** in part as specifically set forth above.

**IT IS SO ORDERED**.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 16, 2013
Florence, South Carolina