IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Stacey Langley, ) | Civil Action No.: 4:11-cv-03324-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| DOLGENCORP, LLC, d/b/a Dollar ) | |
| General Stores, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Stacey Langley ("Plaintiff") filed the above action against her former employer, Dollar General Stores ("Defendant"), alleging gender discrimination, quid pro quo sexual harassment, sexually hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C.A. §§ 2000e to 2000e-17 (West 2003 & Supp. 2010).

On November 21, 2012, Defendant filed a Motion for Summary Judgment, along with a memorandum in support. Plaintiff filed her Response on December 4, 2012, after which the case was temporarily stayed so the parties could engage in mediation. This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III.[1] In the R&R, the magistrate recommends that the Court deny Defendant's Motion for Summary Judgment as to Plaintiff's quid pro quo mixed motive claim and her hostile work environment claim and that the Court grant Defendant's Motion as to all other causes of action. Both Plaintiff and Defendant timely filed objections to the R&R.

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Rogers for pretrial handling.

For the following reasons, this Court adopts the R&R.

## **Background**[2]

Defendant hired Plaintiff in August 2007 to work at its store in Andrews, South Carolina, and eventually promoted her to assistant store manager. For a week or two in mid-to-late 2009, Plaintiff worked at Defendant's Kingstree location with Albert Boyd, a 14-year store manager, to help get the store ready to open. Plaintiff claims that while working at the Kingstree store, Boyd made sexual comments to her on three to five occasions, including "do you want to meet me in the storeroom so I can squeeze those titties," other references to her body parts and genitalia, and would make little moans when passing by. Plaintiff was there for only about two weeks and, because she knew she was going back to the Andrews store, she "let it go." Upon returning to the Andrews store, both Plaintiff's store manager and district manager mentioned the possibility of Plaintiff becoming an assistant manager at the Kingstree store. Plaintiff refused, noting that Boyd was "fresh" and "nasty" and she did not feel like being hit on every day. Additionally, following her time in the Kingstree store, for the next five months or so, Boyd would frequently come into the Andrews Store and make sexually suggestive comments to Plaintiff.

Some time later Plaintiff's store manager left and Plaintiff temporarily assumed the responsibility of store manager. Defendant's district manager told Plaintiff that if she had questions about day-to-day operations, she could contact Boyd. While Boyd was assisting Plaintiff with her additional management responsibilities at the Andrews store, Boyd made further sexually suggestive comments, including telling Plaintiff that "if you give me some I can help you get the manager

---

[2] The facts of this case, including citations to the record, are discussed thoroughly in the magistrate's R&R. [*See* R&R, Doc. # 60, at 1–10.]

2

position." Boyd also called one evening and further propositioned Plaintiff. During the telephone call, however, Plaintiff told Boyd that she was not going to have sex with him and hung up the telephone. From that point forward, Boyd did not say anything to Plaintiff that she considered sexual in nature, though Plaintiff claims he exhibited a bad attitude towards her.

On March 13, 2010, Boyd was chosen as the store manager for the Andrews Store. The district manager said he asked Boyd to look into payroll issues. Boyd discovered that on at least two occasions, Plaintiff had clocked in for time she did not work. The district manager verified that Plaintiff had not worked during those times, and Plaintiff herself admitted she entered time on the two occasions she did not work. Plaintiff maintained her error was just a mistake, not an intentional falsification of records. According to Plaintiff, it was not uncommon for the assistant store manager at the Andrews store to manually enter time through Defendant's time-keeping system, which allowed for time to be entered in advance. Plaintiff explained that she entered her time prior to the day in question because she had planned to work a double-shift on that day. Plaintiff claims Boyd then became manager and told Plaintiff not to work the double shift and that someone else would work it. However, neither he nor Plaintiff changed the time reflecting the double-shift that had already been entered. Plaintiff asserts that it was Boyd's responsibility to review the time entered and change it if it was not correct. Defendant ultimately decided to terminate Plaintiff.

The morning of March 25, 2010, Boyd told an employee at the Andrews store something like "[Plaintiff] was laughing now but [Boyd] had something for her later." Boyd called Plaintiff into the Andrews store office and explained she was being terminated for falsifying time records. Plaintiff contested her termination through Defendant's internal processes and ultimately filed this lawsuit.

**Standard of Review**

The magistrate judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court is obligated to conduct a *de novo* review of every portion of the magistrate judge's report to which objections have been filed. *Id.* However, the Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("*[D]e novo* review [is] unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation."). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins*. Co., 416 F.3d 310 (4th Cir. 2005). Furthermore, in the absence of specific objections to the R&R, this Court is not required to give any explanation for adopting the recommendation. *See Diamond*, 416 F.3d at 315; *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

**Discussion**

Both Plaintiff and Defendant filed objections to the magistrate's R&R. The Court will

4

address each parties' objections in turn.[3]

## I.     Plaintiff's objections[4]

Plaintiff appears to challenge the magistrate's finding that she did not present direct evidence of discrimination. [*See* Pl.'s Obj, Doc. # 65, at 4–6.] However, as she failed to do before the magistrate, Plaintiff presents no evidence that Boyd told her he would fire her or have her fired if she did not succumb to his advances. [*See* R&R, Doc. # 60, at 14 n.7.] As the magistrate explained, direct evidence requires "evidence of conduct or statements that both reflect directly the allegedly discriminatory attitude and that bear directly on the contested employment decision." *Kubicko v. Ogden Logistics Serv.*, 181 F.3d 544, 553 (4th Cir. 1999). "Thus, Plaintiff fails to present direct evidence that she was fired because of her response to Boyd's sexual requests." [R&R, Doc. # 60, at 14 n.7.]

Plaintiff also challenges the magistrate's finding that summary judgment is appropriate on Plaintiff's quid pro quo claim under the pretext analysis for Title VII cases developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). [Pl.'s Obj. Doc. # 65, at 1, 6–11.] Here, Defendant asserts that Plaintiff was terminated for falsifying her time records on two separate occasions. Thus, the burden returns to Plaintiff to establish that the employer's proffered reason is a pretext for discrimination. As she did before the magistrate, Plaintiff argues that her inaccurate time entries were mistakes because she had originally planned to work different shifts but ended up

---

[3]  The magistrate's R&R goes through an in-depth review of the various legal tests and frameworks that govern Plaintiff's claims. The Court therefore need not restate these governing legal principles.

[4]  Plaintiff does not object to the magistrate's finding that she has abandoned her gender discrimination, retaliation and breach of contract claims. The Court agrees with the magistrate on this point and Defendant's Motion for Summary Judgment is granted with respect to those claims.

not working those shifts. [*Id.*] She argues that it was Boyd's responsibility to catch her mistake, and discusses how Defendant's time entry system operated. [*Id.*] However, after conducting a *de novo* review of the R&R on this issue, the Court agrees with, and adopts, the magistrate's discussion on this issue as follows:

> [Plaintiff's argument that Boyd was responsible for fixing Plaintiff's time card] is not consistent with the record.[5] Furthermore, Plaintiff admits to the actions that lead to her termination and acknowledged that falsifying time records is specifically prohibited by [Defendant's] Employee Handbook and can subject an employee to immediate termination of employment. Plaintiff understood that keeping accurate time records was important to [Defendant]. Thus, Plaintiff fails to show that the reason given for her termination, falsification of records, was not the true reason but simply pretext. Accordingly, summary judgment is appropriate on Plaintiff's quid pro quo claim under the *McDonnell Douglas* pretext analysis.

[R&R, Doc. # 60, at 19 (internal citation omitted).] Further, Plaintiff's objections appear to truly be an argument that her termination was based, in part, on her failure to comply with Boyd's sexual advances. This argument merely supports the magistrate's denial of summary judgment on Plaintiff's quid pro quo claim under a mixed-motive analysis. Plaintiff's objections are overruled.

## II.     Defendant's objections

Defendant lodges three objections to the magistrate's R&R.

First, Defendant claims the magistrate erred when, as part of his mixed-motive, quid pro quo analysis, he found there was a question of fact regarding whether Plaintiff's response to Boyd's harassment motivated Defendant's decision to terminate Plaintiff's employment. [*See* Def.'s Obj, Doc. # 68, at 2–10.] Defendant argues that contrary to the magistrate's finding, the evidence in the

---

[5]  Plaintiff appears to argue that managers acted as clearing houses for all time entries. However, Plaintiff in her own deposition acknowledged that it was not uncommon for assistant store managers at the Andrews store to manually enter time through Defendant's system. Thus Plaintiff had access to this system. Additionally, the record does not support the proposition that managers were *required* to catch all mistakes with regard to time entries, just that managers had the *ability* to correct time entries.

case "clearly" establishes that Plaintiff's rejection of Boyd played no role in the decision-making process over her termination. However, the lengthy objection on this point is better characterized as an effort to recast the evidence in the case in a light most favorable to Defendant.[6] The Court has reviewed the magistrate's finding on this point *de novo*, and agrees with the magistrate that, even assuming Plaintiff's termination was based in part upon her own conduct, a dispute of fact exists as to whether it was also based in part upon her failure to comply with Boyd's sexual advances. The magistrate specifically pointed to a number of factual issues to support his finding: 1) there was a close proximity in time between Plaintiff's rejection of Boyd's advances and her termination; 2) Plaintiff testified that Defendant's district manager told her that Boyd made the decision to terminate her; 3) Plaintiff testified that "to her knowledge" Boyd made the termination decision; 4) the testimony of the district manager, as well as emails between the district manager and Defendant's dispute resolution department, indicated that "Boyd partnered with [Defendant's district manager]" on the termination decision; and 5) a co-worker filed an affidavit averring that on the morning Boyd informed Plaintiff of her termination Boyd said Plaintiff "was laughing now, but I have something for her." [R&R, Doc. # 60, at 16–17, 20.] As the magistrate held, when the evidence is viewed in a light most favorable to Plaintiff, "summary judgment is not appropriate on Plaintiff's quid pro quo claim under a mixed-motive analysis." [*Id.* at 21.] Defendant's objection is without merit.

---

[6] For example, Defendant admits that it does not dispute "the fact that Boyd 'partnered' with [Defendant's district manager] on the decision to terminate Plaintiff . . . ." [Def.'s Obj., Doc. # 68, at 7.] Defendant then proceeds to explain that while the two partnered together, it was the district manager who made the decision himself while merely instructing Boyd to deliver the message. [*Id.*] While the evidence could support such an interpretation, as the magistrate discussed, a dispute of fact exists as to whether Boyd made or substantially influenced the decision to terminate Plaintiff's employment. [*See* R&R, Doc. # 60, at 16–17 (thoroughly explaining how the record indicated conflicting evidence as to Boyd's involvement in Plaintiff's termination).]

Second, Defendant contends that Boyd's conduct was neither severe nor pervasive enough to establish a hostile work environment. [*See* Def.'s Obj, Doc. # 68, at 10–14.] Again, this objection is an effort to frame the evidence more favorably for Defendant. For example, Defendant argues that the magistrate incorrectly stated that "Boyd 'frequently' made 'sexual comments' to Plaintiff . . . ." [*Id.* at 10.] The record is undisputed that beginning in mid-to-late 2009 through early March of 2010 at the latest, Boyd used vulgar language to refer to Plaintiff's body and described in detail the sexual acts he would like to do with or to her. This included the following behavior: sexual comments and suggestive moaning by Boyd on three to five occasions over a two-week period in 2009; numerous visits to Plaintiff's store in the following months where Boyd would walk by Plaintiff and make sexual comments; several sexually suggestive comments to Plaintiff after she was temporarily serving as store manager – including a *specific proposition* that Boyd would help Plaintiff get promoted if she would have sexual intercourse with him; and ultimately a nighttime phone call to Plaintiff at work, which was overheard by another employee, where Boyd made sexual comments. [*See* R&R, Doc. # 60, at 1-6 (citing numerous portions of the record).]

Additionally, Defendant appears to argue that this behavior is not enough to give rise to a hostile work environment as a matter of law because it did not interfere with Plaintiff's work performance.[7] [*See* Def.'s Obj, Doc. # 68, at 12–13.] Defendant's argument here is equally

---

[7] Defendant appears to make the argument that Plaintiff's hostile work environment claim cannot succeed absent some evidence of physical touching. The Court can find no support for such a bright-line proposition. *See, e.g.*, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (explaining that actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult"); *Beardsley v. Webb*, 30 F.3d 524, 528–29 (4th Cir. 1994) (finding a hostile work environment when, over six months, a supervisor massaged an employee's shoulders, stated he wanted to "make out" and "have his way" with her, falsely accused her of having an affair, and asked her about her underwear, birth control, and the bodily effects of taking maternity leave). While inappropriate physical touching is certainly a strong indicator of a hostile work environment, the Court finds that, for the reasons

8

problematic. One, Defendant overlooks the fact that Plaintiff was terminated less than two weeks after Boyd became the manager of her store. [*See* R&R, Doc. # 60, at 13.] Two, Boyd's conduct was at least severe enough to cause Plaintiff to voice concern to her superiors on several occasions. [*Id.* at 17–18 (discussing numerous times where Plaintiff complained of Boyd).] While it is possible that Defendant might find a juror willing to find that Boyd's conduct as described above was neither severe nor pervasive, the Court finds it is certainly inappropriate on the record in this case to make such a holding as a matter of law.[8] Defendant's objection is overruled.

Third, Defendant argues in its final objection that it was entitled to an affirmative defense against Plaintiff's hostile work environment claim because Plaintiff did not use its Employee Response Center ("ERC") to report Boyd's conduct nor did she call Defendant's toll free number for Alternative Dispute Resolution ("ADR"). [*See* Def.'s Obj, Doc. # 68, at 14–17.] In *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998), the Supreme Court recognized that in certain limited circumstances,[9] an employer could invoke an

---

stated herein and by the magistrate, the record in this case presents a dispute of fact precluding summary judgment on Plaintiff's hostile work environment claim under Title VII.

[8] Defendant argues that Boyd's comments, while "boorish," were "for the most part . . . brief and . . . minor . . . ." [Def.'s Obj., Doc. # 68, at 11.] The Court notes Boyd's behavior was severe enough that, once Defendant formally investigated Boyd, it terminated him for inappropriate conduct.

[9] The Court doubts that the *Faragher–Ellerth* defense is available in this case, as the harassing individual was not a supervisor when the harassment occurred and the harassment culminated in an adverse employment action. *See Bland v. Fairfax County, Va.*, No. 1:10cv1030, 2011 WL 3421568, at *6 n.4 (E.D.Va. Aug. 3, 2011) (noting that the *Ellerth-Faragher* defense is inapplicable to cases of coworker harassment); *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 328 (4th Cir. 2012) (holding that the *Faragher–Ellerth* doctrine provides a defense to a harassment charge in cases where the employer took no tangible employment action against the victim). However, because this defense nonetheless fails at this stage, for purposes of Defendant's objections the Court will assume without deciding that Defendant is able to invoke *Faragher-Ellerth* doctrine as an affirmative defense in the case at bar.

9

affirmative defense to hostile work environment claims. "The *Faragher–Ellerth* doctrine provides a defense to the charge of supervisory harassment if: (1) the employer 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 328 (4th Cir. 2012) (quoting *Ellerth*, 524 U.S. at 765).

Defendant spends a great deal of time focusing on the second element and citing cases that have applied that prong. However, Defendant fails to show that, as matter of law, the first prong of the *Faragher–Ellerth* doctrine applies in this case. As discussed by the magistrate, Plaintiff told both her store manager and her district manager she would never work for Boyd because he was "fresh" and "nasty." [R&R, Doc. # 60, at 17–18.] She also told her district manager that she would not work in Boyd's store because she did not feel like being hit on every day. [*Id.*] Later, before the store manager's employment ended, Plaintiff told him that Boyd was "at it again," and she avers that she told her store manager that Boyd had been propositioning her for sex and making very sexual statements to her. [*Id.*] In response to Plaintiff's several complaints and comments, Defendant merely told Plaintiff "that's just Albert being Albert," and "everybody knows how Albert is." [*Id.* at 4.] The Court cannot say as a matter of law that Defendant exercised reasonable care to correct Boyd's behavior. Defendant's objection is without merit.

## **Conclusion**

The Court has thoroughly analyzed the entire record, including the R&R, objections to the R&R, and the applicable law. The Court has further conducted the required review of all of the objections and finds them without merit. For the reasons stated above and by the magistrate, the

Court hereby overrules all of the parties' objections and adopts the R&R.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 31] is **DENIED** in part and **GRANTED** in part. Specifically, the Court **DENIES** Defendant's Motion as to Plaintiff's quid pro quo mixed motive claim and her hostile work environment claim and **GRANTS** Defendant's Motion as to all other causes of action.

**IT IS FURTHER ORDERED** that the previously entered stay in this case is **LIFTED**, and the Court imposes the following deadlines for this case:

1. Motions in limine must be filed by **November 4, 2013**, and responses to those motions must be filed by **November 18, 2013**.

2. Attorneys shall meet no later than **November 20, 2013,** for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

3. Parties shall furnish the Court pretrial briefs by **November 27, 2013**.

4. This case is subject to being called for jury selection and trial on or after **December 5, 2013**.

Should the parties desire to further mediate this case and need additional time to conduct such mediation, the parties should jointly contact the Court and the Court will consider modifying the dates above.

**IT IS SO ORDERED.**

                                              s/ R. Bryan Harwell
                                              R. Bryan Harwell
                                              United States District Judge

Florence, South Carolina
September 13, 2013